CONCORD TOWERS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Concord Towers, Inc. v. Commissioner
Docket No. 5049-69
United States Tax Court
T.C. Memo 1974-259; 1974 Tax Ct. Memo LEXIS 61; 33 T.C.M. (CCH) 1147; T.C.M. (RIA) 74259; September 24, 1974, Filed. Converse Murdoch and Robert E. Schlusser, for the petitioner. Richard A. Jones, Jr., for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies of $6,928.47 and $8,194.66 in petitioner's Federal income taxes for its fiscal years ending June 30, 1965 and June 30, 1966, respectively. The only issue remaining is to determine the estimated useful life of certain buildings used in petitioner's business. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Ogletown Towers, Inc., a Delaware corporation, maintained its principal place of business in Wilmington, Delaware when it filed its petition herein. [1] It filed its Federal income tax returns *62 for the years ended June 30, 1965 and 1966 with the district director in Wilmington, Delaware. On October 26, 1961, petitioner purchased eight acres of land located on Delaware Route 273 at the proposed intersection of Interstate 95 (I-95) and Route 273. After completion of I-95 in 1963, this eight acre parcel lay in the northwestern quadrant of the intersection of I-95 and Route 273. Petitioner approached the Sheraton Corporation for a Sheraton Motor Hotel francise, but was unsuccessful because Sheraton preferred inner-city locations. Petitioner next contacted Holiday Inns of America, and learned that a Mr. Marshall had the franchise for the area in which its property was located. Petitioner thereafter entered into a lease with Mr. Marshall's corporation, Marshall Motel Corporation, to erect a Holiday Inn on its eight acre parcel and lease it to Marshall *63 Motel Corporation. Marshall Motel Corporation has operated a Holiday Inn (a 100-unit motel and a restaurant) on the property since July 1964. During its entire separate corporate existence (1961 to 1970), petitioner's sole source of income was rent derived from the lease of this property to the Marshall Motel Corporation. Petitioner has not participated in the daily operation of the motel which has been operated by Marshall Motel Corporation. The Holiday Inn, built to meet Holiday Inn specifications, consists of two buildings of concrete block construction with poured concrete floors and roof, and an outdoor swimming pool. The motel building is two stories high, L-shaped, and contains one hundred motel rooms. Each room has glass-window outside walls, and load bearing interior cinder-block walls. There is no interior connecting corridor; the door of each room opens to the outside. This design (referred to as "outside corridor") permits the guest's automobile to be kept very close to his room for ease of luggage handling. A restaurant, cocktail lounge, meeting room with a maximum capacity of 250 persons, kitchen, lobby and two offices are located in an adjacent one-story building. *64 This motel was the last one built in New Castle County using the outside corridor design. However, this design has since been used by other Holiday Inns located outside New Castle County. The only addition made to the property since it was originally constructed in 1964 was the enlargement of the cocktail lounge in 1973. The use of the motel's meeting room by local business has not materialized as expected, although it has been used for weddings, retirement parties and other similar functions. Approximately four acres of the site are still available for future expansion. The original lease, dated November 8, 1963, is for a term of 20 years and permits up to four 5-year renewals at the lessee's option.The annual rental for the motel building is $95,000 plus 30 percent of the motel's gross receipts over $300,000. The rent for the restaurant building is $15,000 a year plus 5 percent of its gross receipts over $250,000. Petitioner waived its rights to the rent based on a percentage of gross receipts for the fiscal years 1965 through 1967. From the motel Route 273 runs northwest to Newark, Delaware and southeast to New Castle, Delaware. Downtown Newark is 4 miles from *65 the motel and New Castle is 7 miles. When the motel was constructed, the area immediately surrounding it was largely farmland. However the area surrounding Route 273 into Newark has experienced a large amount of commercial, industrial and residential expansion which continues to this time. The land immediately surrounding this road is zoned for light manufacturing and warehousing. In addition, the construction of I-95 has made more land available for industrial development. Three areas fronting on I-95 near Delaware Route 72, approximately 2 miles southwest of the property, have already been designated as industrial parks. Plants operated by the following companies are the following distances from the motel: Avon Products, 2 miles; Chrysler, 5 miles; Crown Zellerbach, 3 miles; Delaware City Chemical Co's., 9 miles; duPont Company (Louviers Bldg.), 5-1/2 miles; Haveg Industries, 6 miles; and Ronson Corporation of Delaware, less than a mile. Motor Wheel Corporation, Westvaco Corporation, General Food Corp. and American Viscose Division of FMC Corp. are all about 2 miles from the motel (near the Avon plant). The Greater Wilmington Airport (terminal) is 6 miles away and the *66 Railroad Station (Wilmington) is 9 miles away. Although the motel is not located within the city limits of Newark, it is clearly within its suburban area. Since 1964 there have been at least three major developments relating to the intersection of I-95 and Route 273: 1. An additional lane has been added to each side of I-95 and money has been appropriated for further widening. Each side of I-95 will be widened to six lanes; the three inside lanes will be for through traffic and the three outside lanes for local traffic. Signs will give ample warning to motorists desiring to exit onto Route 273 by means of a ramp crossing over the three outside lanes. Construction on the median strip on Route 273 and on the interchange has had no noticeable affect on the Holiday Inn's volume of business. 2. Prior to 1973, all traffic exiting off I-95 onto Route 273 had to stop at a stop sign located across from the entrance of the Holiday Inn. A turnoff, completed in 1973, permits motorists to go toward New Castle without stopping at this stop sign. However, the turnoff going toward Newark continues to pass through this intersection. 3. The Delaware State Highway Department has proposed *67 plans to widen Route 273. However, no construction is planned which would adversely affect the ingress and egress to the motel or eliminate the intersection and stop sign across from the motel. A motorist traveling on I-95 cannot see the motel because it is hidden by a wooded area and the exit ramps. However, two large billboards, advertising the Newark Holiday Inn, one for southbound drivers one mile north of the motel and one for northbound drivers three miles south, are located on the perimeter of I-95. The Holiday Inn Directory, which lists all domestic and international Holiday Inns, describes this facility and provides a small map indicating its location. Holiday Inn also has a reservation system ("Holidex") through which one may call a toll-free number and receive a confirmed reservation within a few minutes. Holidex has accounted for an ever increasing percentage of the motel's business; in the first few years of operation it provided about 30 percent of the motel's business, compared to 50 percent at present. Approximately 60 percent of the motel's business is derived from I-95; the other 40 percent is local. The percentage occupancy of the motel from 1965 through *68 1972 was as follows: Fiscal Year Ending 10/31
Percentage Occupancy 1965
72.1%
1966
81.2%
1967
78.4%
1968
77.7%
1969
78.5%
1970
76.1%
1971
76.4%
1972
81.1%
The national percentage occupancy of all Holiday Inns is 70 percent. Marshall Motel Corporation incurred a loss in the first year it operated the motel, and thereafter incurred profits. Marshall Motel Corporation incurred losses in the first two years it operated the restaurant, and thereafter subleased it to a local operator at a rental computed as a percentage of gross sales. The restaurant has been successfully operated by the sublessee. On its returns for its fiscal years ending June 30, 1965 and 1966, petitioner took deductions for depreciation with respect to the motel and restaurant buildings computed on the straight line method using a useful life of 20 years. In his statutory notice of deficiency, respondent determined deficiencies based upon his determination that the useful life of these buildings was 33-1/3 years rather than 20 years.The useful life of the buildings is 33-1/3 years. OPINION Petitioner contends that at the time the motel was constructed and leased to Marshall *69 Motel Corporation, it was reasonable to expect that the property would be useful in the petitioner's business for no more than 20 years. Respondent asserts that petitioner's buildings had a foreseeable useful life of no less than 33-1/3 years as of the taxable years ending June 30, 1965 and 1966. Respondent's determination is presumptively correct and petitioner has the burden of showing that this determination is incorrect. Rule 142, Tax Court Rules of Practice and Procedure.Welch v. Helvering, 290 U.S. 111, 115 (1933). Useful life is a question of fact to be determined from the record as a whole. M. Pauline Casey, 38 T.C. 357, 381 (1962). Unfortunately, useful life is not susceptible of mathematical precision, as it is largely a matter of reasoned judgment based upon facts and conditions known at the end of the taxable years in question. Useful life is defined in section 1.167(a)-1(b), Income Tax Regs., as "not necessarily the useful life inherent in the asset but * * * the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income." The regulations provide further: *70 This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions, and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals and replacements. * * * If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms an adequate basis for making the determination. The estimated remaining useful life may be subject to modification by reason of conditions known to exist at the end of the taxable year and shall be redetermined when necessary regardless of the method of computing depreciation. However, estimated remaining useful life shall be redetermined only when the change in the useful life is significant and there is a clear and convincing basis for *71 the redetermination. * * *. Section 1.167(a)-1(b), Income Tax Regs.
Section 1.167(a)-9, Income Tax Regs., provides: The depreciation allowance includes an allowance for normal obsolescence which should be taken into account to the extent that the expected useful life of property will be shortened by reason thereof. Obsolescence may render an asset economically useless to the taxpayer regardless of its physical condition. Obsolescence is attributable to many causes, including technological improvements and reasonably foreseeable economic changes. Among these causes are normal progress of the arts and sciences, supersession or inadequacy brought about by developments in the industry, products, methods, markets, sources of supply, and other like changes, and legislative or regulatory action. In any case in which the taxpayer shows that the estimated useful life previously used should be shortened by reason of obsolescence greater than had been assumed in computing such estimated useful life, a change to a new and shorter estimated useful life computed in accordance with such showing will be permitted. No such change will be permitted merely because in the unsupported opinion *72 of the taxpayer the property may become obsolete. * * *. Based upon our consideration of all the facts and circumstances drawn from a careful reading of the record, we find that petitioner has not met his burden of proving that respondent's determination of useful life was incorrect. We therefore hold that the useful life of the facility was 33-1/3 years. Both sides presented expert witnesses who supported their respective determinations of the economic useful life of the motel and restaurant buildings. However, an expert's opinion is to be accorded substantial weight only when it is supported by facts in the record. M. Pauline Casey, supra at 381. We found the testimony of respondent's expert witness to be more objective, better reasoned, more soundly based upon the facts, and less partisan. Benjamin Vinton, Jr., the president of Commonwealth Trust Company and Commonwealth Realty Company, testified for petitioner as an expert on real estate. He categorized the facility as a roadside business heavily dependent upon transient, non-local travelers for business. As such, he believed changes in traffic patterns would have a significant effect upon the profitability *73 of the lessee's business. He testified that changes in the exit ramp have resulted in a significant lessening in the traffic from which the motel's business is drawn. He also alleged that Route 273 into Newark will be made into a no-access highway. Two other factors which he considered determinative of a short useful life for the property were his opinion that the buildings were single purpose buildings, and that the motel industry is very volatile, lacks a track record and, like fast food franchise chains, is unusually subject to economic collapse. He provided little basis for his opinions and accordingly we have given them limited weight in our determination. The record clearly shows that any changes in traffic flow, occasioned by changes in the exit ramp, have not adversely affected the motel's volume of business to date. The motel is not solely dependent upon I-95 for business; that highway accounts for only 60 percent of the facility's business. It also draws business from local industry and from the nearby campus of the University of Delaware. These additional sources of business can reasonably be expected to continue strong and to increase in the future due to sustained *74 local growth. We find no merit in Vinton's contention that the risks of operating this motel are similar to those of the fast food franchise chains. Although the facility is arguably a single purpose building (it was designed as a motel in accordance with Holiday Inn specifications), we do not agree with the argument that it is useable solely as a Holiday Inn; we do not find that the proof has foreclosed the possibility that the facility could be run as an independent motel with significant savings in overhead due to the absence of substantial franchise fees. We are not persuaded, from the evidence presented, that the franchise motel industry is fraught with unusual economic peril, especially at this location. There is no evidence in the record that many, or indeed any, Holiday Inns have failed. Petitioner's president testified that he did not expect the lessee to lose any money operating a Holidy Inn, even in the early months of operation, because of Holiday Inns' ready acceptance by the traveling public. Moreover, the economics effects of limited access toll roads on businesses served by them was far from unknown in 1964, since one could examine the histories of the Pennsylvania *75 Turnpike, one of the first toll roads, and Route 13, which runs south from Wilmington, Delaware, one of the first limited access highways in the country. John Liadis, an experienced real estate appraiser with the Internal Revenue Service, appeared as respondent's expert witness. He testified that in determining a useful life for the property he took into consideration its location, physical characteristics and deterioration, as well as its functional and economic obsolescence. He physically inspected not only the property but also the surrounding area, and interviewed several people in the Delaware State Highway Department. He found that the State Highway Department planned no changes which would hinder access to the property or eliminate the intersection in front of it. In 1973 the buildings were in relatively good condition and well-maintained. Liadis found no functional obsolescense since the motel was well laid out and the room size and baths were more than adequate. Furthermore, the property was very conveniently located in that it could draw business from three sources: the interstate highway, the University of Delaware, and local industry. It was near the Wilmington *76 airport and the cities of Newark and Wilmington, Delaware. In his opinion, the area could expect to continue to experience substantial industrial, commercial and residential growth. Liadis gave significant weight to the Holiday Inn franchise in determining a useful life for the subject property. Holiday Inn is one of the oldest and most respected motel franchise operations in the United States. The Holidex System and Directory result in excellent patronage of Holiday Inns. Liadis anticipated that the franchise would be renewed, since the facility appeared to be operating in accordance with the franchise agreement, and both parties could be expected to extend that agreement if the property continued to be operated profitably, as could reasonably be assumed from the record. Liadis determined that the buildings had a physical life in excess of 50 years, but found, based on consideration of all the above factors, that the useful economic life to petitioner was 35 years. For ease of computation, he adjusted this to 33-1/3 years. Since the determination of useful life depends upon the particular property, consideration of comparable properties and their useful life are relevant *77 only to the extent they can provide information which would help us in our decision as to this particular property. Vinton and Liadis each presented as a comparable property one of the facilities for which useful life was determined in Bradford, Inc. v. United States, an unreported case ( D.C. Del. 1972, 30 A.F.T.R. 2d 72-5504, 72-2U.S.T.C., par. 9671). In that case as in this one, Vinton appeared as an expert witness for the taxpayer and Liadis testified as respondent's expert. Vinton chose as his comparable property a Howard Johnson restaurant located on Route 40 at Hare's Corner in New Castle, Delaware ("Hare's Corner"), a few miles southeast of the subject property. This property was determined to have a useful life of 20 years, chiefly because the facility was losing money and business volume had dropped 50 percent, making extension of the lease and franchise unlikely. Vinton testified that the Hare's Corner property was comparable to the subject property because it experienced the same north-south traffic and Route 40 had the same car count. Liadis found the Hare's Corner property not to be comparable because it did not have the same volume of long-haul *78 traffic as the site at issue here, and it was a less desirable location because of greater traffic congestion and noise levels. Liadis believed that the most comparable property considered in the Bradford case was the Howard Johnson motel and restaurant located 3.9 miles southwest of the subject property at the intersection of I-95 and Route 896 ("The Newark Howard Johnson"). Both the Newark Howard Johnson and the Holiday Inn in this case are located on I-95 at relatively comparable state highways. Route 896 is a busier, wider road than Route 273. The Newark Howard Johnson enjoys a slight advantage in accessibility over the subject property in that it is located on the right-hand side of the exit ramp rather than on the left-hand side. Also it is within walking distance of the football stadium at the University of Delaware, and closer to the city limits of Newark, Delaware as well as the industrial parks mentioned earlier. Petitioner contends that the Newark Howard Johnson enjoyed greater local patronage than the subject property, but offered no proof on this matter. The District Court determined in Bradford that the Newark Howard Johnson had a useful life of 33-1/3 years *79 because of its prime location, good construction and maintenance, and the increasing urbanization of New Castle County which had reduced its reliance upon the interstate highway. Petitioner argues that the design of the Holiday Inn involved in this case was outmoded and obsolete at the time it was built. The record shows that it was the last outside corridor motel built in New Castle County. Since that time, all the motels built in New Castle County have been of interior corridor design. However, Holiday Inns continues to build motels with outside corridors along interstate highways. Not only is the cost of this design one-half that of the interior corridor design, but it is also more convenient for the traveler because he does not have to carry his bags a long distance to the room. The lower construction cost gives this design a competitive edge over the interior corridor design. Petitioner argues that the buildings in issue are single purpose buildings, limited to being used as a Holiday Inn motel and restaurant. Petitioner admits that a significant number of budget-type motels have been built, but maintains that the construction cost of the motel involved in this case is *80 too expensive to permit it to be profitably operated as such. While this may be true, we cannot satisfy ourselves from the record that, in the unlikely event the Holiday Inn operation failed, an independent-type motel could not be economically run upon the site. Petitioner argues that the 12-year term of the mortgage indicates the lender's determination that the facility had a short economic useful life. The lender was not called to testify on the point. For all that appears in the record, the short term was as likely to have been the result of the lender's hesitancy over committing funds for longer at only 6 percent interest in an era of rising rates as to have constituted any indication of the buildings' useful economic life. Even petitioner does not contend for a 12-year life. Petitioner urges that the losses incurred during the early years of operation before the billboards had been erected, and profitable operations experienced thereafter, indicate the necessity for these signs and the serious effect their removal would have upon the profitable operation of the business. Petitioner argues that the Highway Beautification Act of 1968 will require the billboards fronting *81 on I-95 to be removed at some indeterminate time in the future. We find from the record that there is considerable doubt as to when, if ever, this Act will be enforced against the motel. We find the billboards to be helpful, but not essential, to the successful operation of the motel facility. If and when they are required to be removed, we cannot on this record, exclude the possibility that the increasing amount of local business plus the Holiday Inn Directory and Holidex reservation system will provide a sufficient level of business to permit continued profitable operation of this facility. We find that the facility has an excellent location. As a result, after its first 9 years the lessee of the facility was doing a thriving business. The innkeeper testified that the percentage occupancy of the facility is substantially above the national average. The lack of visibility of the facility is more than offset by the roadside billboards, by the increasing amount of locally-derived business, by the Holiday Inn Directory, and by the Holidex reservation system which accounts for an ever increasing percentage of the facility's business. We cannot find, on the basis of the record *82 before us, that it is more possible than not that the facility will cease to be profitable in any period shorter than the 33-1/3 years assigned to it by respondent. We find the useful life of the motel and restaurant buildings to be 33-1/3 years. Decision will be entered under Rule 155. Footnotes
1. Ogletown Towers, Inc., was merged into Concord Towers, Inc., in November 1970, whereupon Concord Towers was substituted as petitioner. "Petitioner" herein referes to the original petitioner, Ogletown Towers, Inc. Concord Towers, Inc., also is a Delaware corporation with its principal offices in Wilmington, Delaware. ↩